# Louisville & Nashville Railroad Company, et al. v. City of Covington, et al.

(Decided June 20, 1919.)

## Appeal from Kenton Circuit Court.

1.  Railroads—Laying Water Mains Along Right of Way.—A railroad company may excavate and lay water mains along its right of way for the purpose of carrying water to be used in its engines, yards and shops, and this right is incident to its right to build and main-tain a railroad along such right of way.

2.  Railroads—Laying Water Mains Under Streets.—Where a railroad passes through a city, crossing its streets, its right to excavate and lay a water main under and across the streets for the purpose of supplying water to its engines, yards and shops, an essential in its business, is inherent in the franchise and grant to so use the streets, but the city has the right to prescribe such reasonable rules and regulations governing the excavation and laying of water mains under the street crossings as may appear reasonable and necessary for the protection of the city and the traveling public.

3.  Railroads—Use of Right of Way.—A railroad company may use its right of way for any purpose necessarily incident to its business, which does not interfere with the rights of property owners or trespass upon the rights of the public.

S. D. ROUSE, BENJAMIN D. WARFIELD, E. S. JOUETT and H. L. STONE for appellants.

J. E. SHEPERD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The appellants, Louisville & Nashville Railroad Company, et al., own and operate a line of road through the city of Covington, crossing several of its streets. It also has yards and repair shops in and adjacent to said city. Its road was constructed more than sixty years ago, and as much as thirty years ago it entered into a contract with the city of Covington by which the city of Covington was to and did supply the railroad company with water for its engines, yards and shops for all purposes, at the price of three (3) cents per 100 cubic feet, and this continued for twenty-five years. On its termination the city raised the price to ten (10c) cents per 100 cubic feet of water, over the protest of the railroad company.

An investigation was then started to ascertain the exact cost of the water supplied by the 100 cubic feet, and it was ascertained to be 7.2 cents, whereupon the city offered to supply the railroad company with water at 7½ cents per 100 cubic feet, but this the railroad contended was exorbitant and much above what it would cost it to furnish its own water. Thereupon it started excavating preparatory to laying a water main along its right of way from a proposed water pump station on the bank of the Licking river, crossing under some fourteen streets of the city of Covington, so as to supply water to its engines and yards in Covington, and also at its shop at DeCoursey and other points along its right of way in said city. When the railroad company was about to make an excavation crossing a street the police authorities of the city of Covington interfered and stopped the work. The railroad company felt aggrieved by the action of the city, and instituted an action in the Kenton circuit court, praying a mandatory injunction against the city of Covington and its police authorities staying their interference with the proposed plan of excavating for and laying a water main along the right of way of the railroad company and especially at the street crossings. This relief was refused by the Kenton circuit court, and on appeal to this court it was held that the statutes under which the railroad was proposing to proceed, did not confer upon the company absolute right to construct its road upon or across any streets, but only the right to do so upon such terms and conditions as shall be agreed upon between the corporation and the authorities of the city; and further that the railroad company could not, upon the mere rejection of its own terms and conditions, proceed to lay its water main and enforce its right by enjoining the city authorities from interfering with the work. The opinion concluded as follows: "But if it be conceded that the city may not arbitrarily refuse to agree upon terms and conditions, but is under the mandatory duty of agreeing upon reasonable terms and conditions, a question not decided, then the company's only remedy, if it has one, is by mandamus or mandatory injunction to compel the city authorities to exercise their discretion in good faith." The judgment of the lower court sustaining demurrer to the petition and dismissing it, was affirmed by this court.

The suggestion contained in the concluding paragraph of the opinion referred to was seized upon by the railroad company, and this suit was instituted on April 3, 1919, by the Railroad Company United States Railroad Administration, Walker D. Hines, Director General, against the city of Covington, its mayor and commissioners, praying a writ of mandamus directing and ordering the city and its officers, and each of them, to agree with the railroad company upon reasonable terms and conditions for the laying of water mains under the surface of the several streets named in the petition, as traversed.

After manifesting ts right to sue, it is averred in the petition that the appellants are unable to secure an adequate supply of water from the city of Covington, that the price charged for water by the city is unreasonably high, and that the railroad company has a right to construct its own water mains through the city and convey its supply of water therein, because same is essentially incident to its business. To this petition a general demurrer was filed and overruled by the trial court. The allegations of the petition were traversed by the answer and it was affirmatively pleaded by the city that it had, by legislative authority and by reason of the construction, maintenance and operation for many years of a municipally owned water plant, the exclusive franchise for or furnishing water to consumers within the city. A general demurrer was filed to the answer, evidence was taken in support of the issues, and an extended stipulation, signed by the parties, was filed and the case submitted upon its merits, whereupon the court denied plaintiffs' prayer for mandamus, dismissed the petition of the railroad company, et al., and it appeals to this court.

It is the contention of the appellants, that the company (1) has the right under its franchise, as a railroad company, to lay water pipes along its right of way under the surface of the streets of the city of Covington; that such a right is necessarily incident to the business of the railroad, because water is an essential in the ordinary conduct of its business; (2) admitting that the city has the exclusive franchise over its streets and alleys for the laying of pipes for the distribution and sale of water to its inhabitants, appellant insists that such a fran-

chise does not prevent it from laying water mains for the purpose of supplying its own water needs for two reasons; (a) because its charter granted by the state legislature previous to the granting of the said city charter, vested it with the right and power so to do; (b) it does not propose to distribute or sell water in competition with the city, nor otherwise use its pipes than in supplying its own water needs.

For the city of Covington it is insisted (1) that the railroad company has no implied power to make excavations in or across the streets to lay water mains therein, by reason of previous permission to construct its railroad across the surface of streets; (2) the construction of the water system in the city of Covington by the railroad company impairs the exclusive franchise under which the city furnishes water to its inhabitants.

This litigation results from the desire on the part of the railroad company to avoid buying water from the city at the price proposed, because the railroad calculates that it can provide water for its own use at less expense than the city is proposing to perform the same service, and the city is anxious to retain the business which it has with the railroad company, out of which it realizes a profit. The city has invested about two million dollars in its water plant, and is equipped to supply water to the railroad company with little additional cost above what would be necessary if it did not have this contract. It is also supplying the C. & O. Railroad Company with water at the price of 7½ cents per 100 cubic feet, and this railroad is not objecting to the price. Other large consumers are no doubt patrons of the city plant in addition to the individuals who consume water in their homes and places of business.

We do not, however, regard the commercial element in this case as controlling, nor is it entitled to the slightest influence in view of the conclusion we have reached upon the main question involved: Is the laying of a water main along the right of way to supply water necessary in the operation of the business of the company such an incident to the construction and maintenance of the road as may be regarded and classed as included in the grant of a right of way?

May a railroad company construct water mains along its right of way, crossing under the surface of streets in

an incorporated city, subject only to such reasonable regulations, terms and conditions as shall be agreed upon between the railroad company and the authorities of the city under subsection 5 of section 768, Kentucky Statutes? The composite answer of courts and text writers generally throughout this country to this question is, that a railroad may construct and maintain water mains under the surface of streets along its right of way for the purpose of supplying water for its own use, essential in its business, but not for any other purpose, at least for no purpose not necessary or essential to the business of the corporation. The leading case upon this subject in this country is Canton v. Canton Cotton Warehouse Co., et al., 84 Miss. 268, 65 L. R. A. 561, decided in 1904. In holding that a grant to a railroad company of the right of way to cross highways in municipal corporations includes the right to lay along the right of way pipes to conduct water to and supply locomotives and other needs attendant upon the operation of the railroad, the Mississippi Supreme Court said:

"The only real question in this case for decision is this: Did the grant of the right of way, or the acquisition of the right of way by forty years' use, confer upon the railroad the right to lay the water pipes set out in the testimony, under the ground forming part of the right of way, where the pipes would run under the streets in question, of the city of Canton?

"The injunction is based upon the proposition that to permit the railroad to dig up the surface of these two streets crossed traversely by the railroad right of way, so as to lay these pipes underground, beneath the surface of the streets, is an interference with the use of these streets as streets. It is, of course, true that the city of Canton has full power to control its streets and their use by reasonable police regulations.

"Power of cities in this regard is very large. On the other hand, the railroad company has a right of way over these streets, and the grant of the right of way must carry with it every such use of the incidents of the right of way as will reasonably facilitate the efficient operation of the railroad, which use does not also interfere with the use of the streets by the city as streets for the passage over them by persons riding, driving or walking, or which does not interfere with their use as streets for

other purposes, and which use does not also interfere with the property rights of abutting owners. . . .

"But as it is also clear that whatever use of the ground beneath the surface of the streets, essential to the efficient operation of the railway, may be fairly included within the grant of the right of way itself, as incident thereto, is a use to which the railroad company has a right. Take the concrete case. What the railroad wants is water. Railroad trains can not be operated without water. The procurement of water in abundant supply is essential in the highest degree, to the efficient operation of the railroad. . . .

"This much being proved, it follows to our mind, irresistibly that it has the power to lay such conduits as are required to bring the water from the source of supply to the place of use. It can hardly be seriously contended that a railroad company clothed with power to grade its right of way and to remove the earth therefrom, to lower or raise at pleasure the surface of the ground, as to dig wells for the purpose of obtaining water, would not likewise have the power to dig thereon a trench and lay pipes for the purpose of conveniently conveying the water needed to supply the motive power. We think it manifest, therefore, that, if the water main in question was to be laid solely on that portion of the right of way of the railroad obtained by private conveyance or condemnation of private property, the railroad company would be clearly within its rights in so installing it. And we are unable to see that there is any distinction, based upon any sound legal principle, in the power of a railroad company to make such proper use of its right of way as the needs of its business may demand, whether such right of way is acquired through private property by donation, purchase or condemnation, or granted by legislative enactment over public property, streets or highways."

This opinion was rested upon the following authorities: Elyton Land Co. v. South and North Ala. R. Co., 95 Ala. 647; Memphis & Cr. Co. v. Womack, 84 Ala. 146; American Teleph. & Teleg. Co. v. Pearce, 71 Md. 541, L, R. A. 200; Western U. Teleg. Co. v. Rich, 19 Kan. 517; Taggart v. Newport Street R. Co., 16 R. I. 688, 7 L. R. A. 205; Houghan v. Milwaukee & St. P. R. Co., 35 Iowa 558.

The exact question involved in this case has never been decided by this court, although we have, in discussing collateral questions, adverted to the subject more or less upon several different occasions. For instance, in the case of L. & N. Ry. Co. v. City of Louisville, we said: "The legislature has the undoubted power to authorize the construction and operation of a railroad through a city or town, and upon its streets when they are not wholly obstructed, even without the consent of the municipal legislature."

Again in the case of Louisville Property Co. v. Commonwealth of Ky., 146 Ky. 827, we approved the following quotation from 1 Wood on Railroads, sect. 170:

"Thus it has been held that a railroad company may erect a telegraph along its roadway, as incidental to its primary business. . . . This is upon the principle that a corporation has, in addition to its special powers, implied authority to do all acts necessary for the full and complete utilization of its special powers which are not expressly or impliedly excluded by the terms of the grant."

Also in the case of the Commonwealth v. Southern Pacific Railway Co. and L. & N. R. R. Co., 164 Ky. 818, we held "As an incident to its original business, it (the ralroad) already had the right to construct and maintain telegraph and telephone lines along its right of way, as this was necessary in the operation and movement of its trains."

In construing sect. 768, Kentucky Statutes, with reference to the power of railroads, we said in the case of the County of Jefferson v. Louisville & Interurban Railroad Co., 155 Ky. 810: "This statute confers power upon the appellee company to construct its road upon or across any private or plank road or highway, but this in our opinion does not mean that a railroad company may construct its line of road, lay its tracks longitudinally on a public highway. It only means that it may lay its tracks across such highway." Continuing the opinion says: "No construction that would authorize the character of occupation of the public highways of the state by railroad companies here contended for, or that would invest them with power to practically destroy public highways for public use in the manner in which such highways are used by the people of the state, should be

adopted, if there is any escape from it. . . . For the reasons indicated we think that the power conferred by the statute upon a railroad company to construct its road upon a public highway is limited to the right to construct it upon the highway in crossing it, and that a railroad company has no authority under the statutes to construct its line of road for any distance lengthwise, in and upon the highway. This being our view of the matter, the company, in attempting to construct its road longitudinally in and upon this public highway, was committing a trespass.''

The principle announced in the Canton case, *supra*, that a railroad company possesses the right, under its charter and the general law, to lay pipe lines for the carrying of water along its right of way under the surface of streets crossed, is sustained and elaborated upon by various text writers.

In 22 R. C. L., page 809, it is stated:

''It is the well settled rule that railroad corporations, like private corporations, possess the powers which are expressly conferred by their charters, together with such powers as are fairly incidental thereto. These incidental powers, it must be noted, are of broad scope and extent, for it is considered that in the construction, operation or maintenance of its line of road, a railroad company is vested with all such incidental powers as may be requisite for the successful consummation of the object for which it was granted corporate existence. Otherwise, the original legislative grant might be fruitless and ineffectual. In accordance with this principle it has been held that a railroad company may, without express legislative authority, lay conduits under the surface of its right of way, and under and across public streets of a city, in order to bring necessary water from the source of supply to the place of use. . . .''

And again, on page 865 of the same text, it is said:

''A railroad company acquiring a right of way has the free and perfect use of the surface of the land, so far as is necessary for all its purposes, and the right to use as much *above* and *below* its surface as may be needed. This would include the right to tunnel the land, to cut embankments, to grade and make roadbeds, to operate and maintain a railroad with one or more lines of track with proper stations, depots, turnouts and other appurtenances of a railroad. Water being necessary to the

operation of a steam railroad, the company has the right
to purchase it or procure it in any lawful method most
convenient, whether by wells dug on its right of way
or by purchase from others, and it has the power to lay
along its right of way, either through private or public
property, such conduits as are required to bring the water
from the source of supply to the place of use.''

Also in 10 R. C. L., page 119, the text is as follows:

''As a railroad company has the right to do all things
with its right of way within the scope of its purposes and
charter powers, it may lay a water pipe for the purpose
of bringing water for use by its engines or maintain a tel-
egraph system for use in despatching its trains, without
compensation to the owner of the fee.''

Again, on page 151 of the same text, the text is:

''The railroad company may, when public necessity
and convenience require, lay additional tracks across the
highway within its right of way, construct telegraph
lines for its own use in despatching trains, and lay a
water pipe for supplying water to its engines, without
any duty arising to compensate the municipality which
represents the public in its care of the highway.''

In discussing the right of a railroad to occupy roads
and streets, Lewis on Eminent Domain, vol. 1, sec. 170,
says:

''If the grant of authority specifies the principal part
of the street to be occupied, or imposes any conditions
as to the construction or operation, such provision must
be complied with. Every such grant is accompanied with
the implied conditions, that the railroad shall be so con-
structed and operated as to produce no unnecessary or
unreasonable interference with public or private rights.
. . . The company may lay a switch track to its barns
and occupy for a short distance for that purpose a street
not named in its grant. And the company may lay
water pipes on its right of way across streets to conduct
water to a suitable place for its engines.''

See also Elliott on Roads and Streets, vol. 1.

The doctrine is well stated in Nichols on Eminent
Domain, vol. 1, second edition, page 386, as follows:

''Conversely, the railroad company may, when pub-
lic necessity and convenience require it, adapt its road to
increased travel by laying additional tracks across the
highway within its location, or it may construct tele-
graph lines for its own use in despatching trains, or lay

water pipes for supplying water to its engines, or otherwise make use of the full extent of its easement, without incurring any obligation to compensate the municipality in which the crossing is situated, or any of the public service corporations which have a franchise to share in the easement of the highway through the use of rails, pipes and wires laid therein.''

A municipality has complete supervision of its streets and alleys under our general law governing cities, but where it has granted a right to a railroad to maintain a track through the city, crossing its streets, it can not prevent the company, in the interest of its business, from laying water pipes along its right of way and under the streets, but it can regulate and control by reasonable requirements the excavation at the street crossings and the laying of pipes, because in this it has a direct interest to guard and protect its inhabitants and the traveling public. It can not arbitrarily refuse to allow the railroad to make suitable excavations for the purpose of laying water mains at street crossings, but it may and should require the work to be done both expeditiously and in workmanlike manner so as to interrupt the traveling as little as possible, guard the safety of the public, and at the same time preserve the grade and supporting strength of the street or alley.

Certain powers, liabilities and restrictions are incurred and imposed upon railroad companies by sect. 768, Kentucky Statutes. Its title is ''Powers, Liabilities and Restrictions of Company,'' and in so far as it affects this litigation is as follows:

''Every company shall possess the following powers, and to be subject to the following liabilities and restrictions:

(1)   To cause such examinations and surveys for the proposed railroad to be made, etc.   .   .   .

(2)   To receive, hold, enter upon, and take possession of such voluntary grants   .   .   .   of real and other property   .   .   .

(3)   To purchase, hold, enter upon, take possession of and use all real estate franchise and other property,   .   .   .

(4)   To lay its road not exceeding 100 feet in width, etc.,   .   .   .

(5)   To construct its road upon or across any   .   .   .   highway, street, lane or alley,   .   .   .   but the corpora-

tion shall restore the . . . highway, street, lane, alley, . . . to its former condition, as near as may be, and in case that the road is constructed upon any public street or alley, the same shall be upon such terms and conditions as shall be agreed upon between the corporation and the authorities of any city in which the same may be.''

This grant of power by the state legislature to railroad corporations is paramount to the power of cities over its streets because the power which the city has is derived from legislative grant and is subject to be recalled in whole, or in part, by the power that gave it at any time. In a case like the one before us, where the railroad company has the power to construct its road upon or across a street subject only to the condition that the same shall be upon such terms and conditions as shall be agreed upon between the railroad company and the city authorities, and where the city has granted to the railroad company the right to cross its streets with its track to maintain its tracks and carry on its business as a railroad company over and across such streets, such a grant by the city carries with it to the railroad company the incidental power of constructing and maintaining telephone or telegraph wires along and over the right of way and of excavating, laying and maintaining water mains for the carrying of water to be used in the engines of the company and for all other purposes essential to the business of the railroad, because the telephone, telegraph and water are so related to the primary business of the railroad company as to be necessary and concomitant parts thereof. It is generally held that a railroad company may use its right of way over and across streets in any manner connected with its ordinary business which does not unreasonably abridge or interfere with the rights of the traveling public to the use of the street to such an extent as to amount to an appropriation of the street by the railroad company. But in making the changes in its track or other improvement in the street crossings, it must have the consent of the municipality and the work must be done according to such reasonable terms and conditions as may be imposed by the city. This is necessary because the city must keep its streets in a reasonably safe condition for public travel, and it may impose such reasonable rules and restrictions upon the use of the streets as will safeguard the interests of the

inhabitants of the city and the traveling public generally. City of Covington v. L. & N. R. R. Co., 18 Ky. 136; Dillion on Municipal Corporations, vol. 2; Lewis on Eminent Domain, vol. 1, sec. 170.

The city is not entitled to compensation for allowing the railroad company to excavate and lay water mains across streets, because the grant of the right to lay such water mains passed with the franchise which the city gave to the railroad to construct and maintain its railroad originally. The laying of the water pipes is not an additional servitude or burden upon the right of way grant, but only one of the necessary incidents which must be considered to have been contemplated by the parties when the franchise was granted to the railroad to construct and maintain its line through the city.

The mayor and commissioners of the city of Covington should have indicated to appellant company's representatives such reasonable terms and conditions for the excavation of the streets and the laying of water mains as would have protected the city's interest, and having failed so to do, the railroad company was entitled to the mandatory injunction sought to compel the exercise by such city officials of their discretion in good faith, and on a return of the case to the court below it will enter an order directing appellees, the mayor and commissioners of the city of Covington, to meet with the representatives of the appellant at the city hall in the city of Covington, at some reasonable time to be fixed by the mayor and to submit to said railroad company such reasonable terms and conditions respecting the excavation of the street crossings and the laying of water mains as will safeguard the rights of the city, and the traveling public.

Judgment reversed with directions to enter such orders and judgment in conformity to this opinion, as will carry out the objects and purposes indicated.