808

## ILLINOIS CENT. R. CO. v. CITY OF MAY-FIELD et al.

Circuit Court of Appeals, Sixth Circuit. November 8, 1929.

No. 5137.

Hickenlooper, Circuit Judge, dissenting.

John C. Doolan, of Louisville, Ky. (Robbins & Smith, of Mayfield, Ky., Trabue, Doolan, Helm & Helm, of Louisville, Ky., R. V. Fletcher, of Chicago, Ill., and Charles N. Burch, of Memphis, Tenn., on the brief), for appellant.

W. J. Webb, of Mayfield, Ky. (Webb & Webb and Aubrey Hester, all of Mayfield, Ky., on the brief), for appellees.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge. For many years prior to 1897 plaintiff's predecessors had owned and operated, under legislative franchises, a certain line of railroad from Paducah, Ky., through Graves county to Fulton, Ky. Prior to 1888 the road ran near the corporate limits of Mayfield, the county seat of Graves county, which was designated by Kentucky statutes as a city of the fourth class. Just outside the corporate limits, running substantially north and south, it crossed the Paducah and Columbus highway, running east and west, with its main line, a "passing" or "switch" track and a "team" track. The freight depot was located north of the highway on the west side of the main line, and the passenger station was on the south of the highway and east of the main line. This is yet the physical arrangement at that point. In 1888 Mayfield extended its corporate limits and included these tracks and station houses. The highway became known as Broadway street, and, by reason of the growth of the town, runs now nearly through its center. It is the principal street and carries from 85 per cent. to 90 per cent. of the traffic. The town has a population of about 8,000 or 10,000. Plaintiff, by virtue of a leasehold, has operated and maintained the railroad since 1897.

Prior to this suit several checks were made of the traffic at this crossing. As typical of the others, on May 22, 1924, between 6:30 a. m. and 5:30 p. m., 2,775 wagons, automobiles and buggies and 2,448 pedestrians crossed.

On January 11, 1927, a winter month, between 7:45 a. m. and 5:15 p. m., 1,450 automobiles and wagons and 1,410 pedestrians crossed. Something like 15 or 20 industrial plants are located on plaintiff's switch and team tracks on both sides of Broadway street and are served by plaintiff's local freight trains. According to plaintiff's testimony the longest delay to traffic at any one time caused by switching operations across Broadway street as indicated by the traffic check was 4 minutes and 30 seconds, while defendant's evidence tends to show that traffic was frequently held up on this account as long as 15 or 20 minutes; that the average delay was from 3 to 15 minutes; and that large crowds would gather waiting for the track to clear, and that sometimes the line of waiting automobiles would extend for two or three blocks. The plaintiff maintained a watchman at the crossing, and the evidence indicates that if, in the switching operations, the cars obstructed the street "very long," the watchman would cause the crew to break or cut the train and allow the traffic or at least a portion of it to proceed.

On November 15, 1926, the defendant, through its board of council, passed an ordinance which, as later amended, provided that railroad cars should not be switched on or across Broadway street, and to do so was declared a nuisance and was punishable by fine; the ordinance declaring that its object was to prohibit and prevent the switching of trains and cars across Broadway street and making up trains and distributing cars, but that it was not to interfere with or prevent the operation of trains across the street on the main line when necessary to serve industrial tracks south of Broadway. The ordinance further commanded that all tracks on Broadway street, except the main line track, should be removed. Plaintiff's bill attacked this ordinance as void and sought a perpetual injunction against its enforcement.

Upon final hearing the District Judge dismissed the bill. The several grounds relied upon for a reversal of the judgment on this appeal present three substantial questions: (1) Whether the state has delegated to the city whatever power it had in respect to controlling the use of the city streets by the railroad company; (2) whether, if so, the ordinances are unreasonable or arbitrary; and (3) whether the Transportation Act (U. S. Code, tit. 49, § 1, subdivision 21, 49 USCA § 1(21) confers upon the Interstate Commerce Commission such exclusive jurisdiction of the matters here involved as to preclude

the city from enacting the ordinances in question.

The city predicates its power to pass and enforce these ordinances upon Kentucky statutes, § 3560 and section 3490 with its subsections 25 and 33. Subsection 25 of section 3490 empowers all cities of the fourth class "to prevent railways from blocking or obstructing the streets on public ways of the city and to fix penalties for violation of these provisions. * * * " By subsection 33 it is provided that the "city council shall have legislative powers to make by-laws and ordinances for the carrying into effect of all the powers herein granted for the government of the city, and to do all things properly belonging to the police of incorporated cities. * * * " Section 3560 of the Kentucky statutes places all public streets, alleys, sidewalks, roads, lanes, avenues, highways, and thoroughfares under the exclusive management and control of the city. We are entirely satisfied, not only from the language of these statutes but also from the decisions cited in argument, including Dayton v. Street Ry. Co., 177 Ky. 202, 197 S. W. 670, that the state has delegated to the city whatever power the state had to regulate and control the railroad company's use and occupancy of the city's streets.

This brings us to the second contention of the plaintiff that the ordinances are unreasonable and arbitrary. If this contention is correct, it is to be admitted, as plaintiff further contends, that the ordinances violate both the state and the federal Constitution. Under the cited provisions of the state Constitution which are mainly relied upon, sections 13 and 242, it was within the power of the state—of the city respecting the matters here involved—to enact such laws and ordinances as have a reasonably substantial tendency to further the interest of the public welfare. Laws having that aim and within the limits of that effect are held to be a proper exercise of the police power, and therefore reasonable. L. & N. R. R. Co. v. City of Louisville, 141 Ky. 131, 132 S. W. 184; Workmen's Compensation Board v. Abbott, 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789; and Fowler v. Obier, 224 Ky. 742, 7 S. W.(2d) 219. Accepting this as the test, plaintiff contends, nevertheless, that the case is controlled by certain Kentucky decisions, among them Dayton v. Street Ry. Co., supra. That case involved an ordinance which required the railway company to remove its tracks from a city street. The tracks were necessary for the operation of the railway

company, and in addition, if removed, all of the tracks of the company became entirely disconnected with a certain lot of the company also necessary for its use. What the court held was that under the particular facts of that case the ordinance was unreasonable. The effect of the ordinance involved in City of Owensboro v. Railroad Co., 40 S. W. 916, 19 Ky. Law Rep. 449, was to require the removal of the road, and in that case, also, the court held that the ordinance was unreasonable. Railroad Co. v. Covington, 184 Ky. 811, 213 S. W. 568, involved an ordinance which prohibited the railroad company from laying water mains along its right of way in the street for the purpose of carrying water to its engines and yards. The case presented no substantial question of public safety and convenience, as the placing of the water mains under the tracks could not have rendered the street more dangerous nor in any way have interfered with the use of it by the public. Under those circumstances the court held that the ordinance was unreasonable.

Each of the three cases mentioned above is distinguishable from the case at bar on its facts, and in each of them the court recognized the right of the city to impose such reasonable rules and restrictions upon the use of the streets as would safeguard the interest of the inhabitants of the city and the traveling public. The remaining case that is principally relied upon by the city is Illinois Central R. R. Co. v. Covington, 211 Ky. 825, 278 S. W. 109. That was a suit brought by 10 citizens of Mayfield to enjoin the railroad company from using the tracks here involved in switching cars and making up trains, upon the theory that such use of the street was a public nuisance. The court held that the action could not be maintained by the plaintiffs, who had failed to show that they had suffered any injury distinct from that suffered by the general public. While that holding was sufficient for the purpose of the case, the court went further and said that the record in that case failed to show that the railroad company used its tracks across Broadway in such a way "as to unreasonably interfere with the public in general or appellees in particular." There again, though, the court recognized the right of the city to enact any such ordinance with respect to the use of its streets by a railroad as had a reasonably substantial tendency to further the interest of the public welfare. The evidence in that case, as disclosed in the opinion, is substantially different from the evidence in the case at bar. Here there was

credible evidence tending to show that the use of the street for the switching and storing of cars upon these tracks caused unusual delay to the traveling public, and the lower court was of the opinion that the ordinances in question would have a substantial tendency to further the interest of those who were using the street. We cannot say that this conclusion was wrong.

Nor can it be said that the ordinances are invalid because they not only prohibit the use of the street for the switching and storing of cars, but they also require the removal of the two tracks in question from the street. The ordinances do not undertake to prohibit the railroad company from laying and operating switching and side tracks in the city, but only undertake to prohibit it from maintaining and operating any such tracks across Broadway. So long as the tracks here involved remain across Broadway there is likelihood of their being used for that purpose—in fact they are adapted to no other purpose. The aim of the ordinance is to stop the switching and moving and storing of cars on that street—that is regulatory; and as an incident to that regulation, it was, we think, clearly within the power of the city under Erie R. R. Co. v. Commissioners, 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322, to require the removal of the tracks.

It is said, however, that the state having granted the plaintiff the right to establish its line of road with the necessary tracks for switching and storing of cars, it is not within the power of the city, though acting with all the authority that the state possessed, to limit the use of the passing or switching tracks, or to require their removal. It is true that plaintiff's franchise vested it with all the rights and privileges of a common carrier and with the right to receive and deliver freights not only at its freight depot but to lay and maintain such side tracks and team tracks and to cross the street or highway therewith at such points as was reasonably necessary to accommodate its patrons. However, plaintiff never acquired, by its franchise, any specific or permanent location in the street for these tracks. The state never surrendered its dominant right to regulate and control the use and location of these tracks, which it has now delegated to the city, and the plaintiff took the risk of having the situation disturbed if it should become necessary in the public interest. New Orleans Gas Light Co. v. Drainage Comm'n of New Orleans, 197 U. S. 458, 460, 25 S. Ct. 471, 49 L. Ed. 831; New York & N. E. R. R. Co. v. Town of Bristol, 151 U. S. 556, 573, 14 S. Ct.

437, 38 L. Ed. 269; Missouri, K. & T. R. R. Co. v. Oklahoma, 271 U. S. 303, 310, 46 S. Ct. 517, 70 L. Ed. 957; Denver & R. G. R. R. Co. v. Denver, 250 U. S. 241, 245, 39 S. Ct. 450, 63 L. Ed. 958; City of Dayton v. Street Ry. Co., 16 F.(2d) 401, 403 (C. C. A. 6). Moreover, these ordinances, as we have said, do not prohibit the railroad company from laying and operating switching and passing tracks in the city, but only prohibit it from maintaining such tracks across Broadway.

The evidence is that plaintiff can rearrange its tracks so as to comply with the ordinance without loss of revenue or serious inconvenience to any shipper. In fact such an arrangement was in force during a test period. In this situation, it seems entirely fair to say that the city is acting within the legitimate scope of its power.

What has been said substantially disposes of the due process contention. The ordinance took no property in which plaintiff had a vested right. It did not even deprive plaintiff of the physical property, the rails and ties located in the street. It only ordered their removal as an incident necessary to the new arrangement, but in the same connection it provided for freight service south of Broadway street over the main line. There is no evidence that the change either seriously interfered with or endangered main line traffic or curtailed any of plaintiff's local freight service. Reasonable regulation, though it involves added cost or expenses, is not forbidden by the Fourteenth Amendment. Richmond, F. & P. R. R. Co. v. Richmond, 96 U. S. 521, 24 L. Ed. 734. The cost of reconstruction, to wit, $9,450 according to plaintiff's engineer, or perhaps more according to the plan adopted, and the increased cost of annual maintenance, to wit, $3,800, with which the ordinance burdens plaintiff, are not so excessive as to amount to confiscation.

The ordinance, it is true, may be somewhat burdensome, but if it was really intended for the promotion of the public safety, convenience, and welfare and had a real tendency to carry these purposes into effect, it is not within the province of the court to strike it down. Wabash R. Co. v. Defiance, 167 U. S. 88, 101, 17 S. Ct. 748, 42 L. Ed. 87; Hadacheck v. Sebastian, 239 U. S. 394, 410, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; Mobile County v. Kimball, 102 U. S. 691, 704, 26 L. Ed. 238. Nor can it be destroyed because a more effective or more economical plan of effecting that purpose might suggest itself to the court. Lehigh Valley R. R. Co. v. Comm'rs, 278 U. S. 24, 33, 49 S. Ct. 69, 73 L. Ed. 161.

■ The objection that the ordinance offends against the equal protection clause is without merit. It prohibits switching across Broadway street on these particular tracks not only by the plaintiff but by any other company operating railway trains, but, if considered as applicable to plaintiff alone as the only party having the use and control of the tracks, the ordinance is yet valid. Richmond, F. & P. R. R. Co. v. Richmond, supra.

■ The contention that the ordinance is in violation of the interstate commerce clause and of the Transportation Act is likewise untenable. Denver & Rio Grande R. R. Co. v. Denver, supra; Lehigh Valley R. R. Co. v. Comm'rs, supra. As pointed out in the Lehigh Valley case, the care of grade crossings is peculiarly within the police powers of the state, and there is no evidence to indicate that the expense necessary to a compliance with the ordinance was so excessive as to interfere with plaintiff's obligations to the Interstate Commerce Commission under the Transportation Act. (41 Stat. 456.)

Under the foregoing considerations the decree of the lower court is affirmed.

HICKENLOOPER, Circuit Judge (dissenting). I am unable to concur for the reason that the ordinances seem to me essentially unreasonable and arbitrary. The question is not whether a more economical or better method has occurred to the mind of the court, but whether the proposed requirement bears reasonable relation to the purpose of public welfare. To me it seems that it does not but is one of those insidious invasions of private and constitutional rights under the alleged protection of a nebulous public welfare, examples of which are all too frequent. Compare, inter alia: Dobbins v. Los Angeles, 195 U. S. 223, 239, 25 S. Ct. 18, 49 L. Ed. 169; Meyer v. Nebraska, 262 U. S. 390, 399, 400, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446; Burns Baking Co. v. Bryan, 264 U. S. 504, 513, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661.

The unitary nature of the terminal is destroyed by cutting it into two parts operatively connected by a main line track over which no "switching" (whatever that means) is permitted at Broadway. The useful value of the siding as a passing track is entirely destroyed, and as a siding its value is substantially destroyed not only within the limits of the street but to a large extent on either side. Vested rights in the roadbed, tracks, and right of way, established and enjoyed for half a century, are appropriated to public use without suggestion of compensation. And all

this without any attempt whatever at regulation of the use of the crossing by any of the more direct, pertinent, and familiar methods of control, but by seizure, destruction, and legislative eviction from the properties (or a material part thereof) so long possessed. This cannot be justified by saying that such vested rights are always subject to reasonable regulation, for this assumes the very point in issue; nor by the extent of the monetary damage to the railroad for this is a difference of degree only and not of kind or quality.

A complete severance of the railway at Broadway would concededly be unconstitutional under Dayton v. Street Railway Co., Owensboro v. Railroad Co., Railroad Co. v. Covington, etc., decided by the courts of Kentucky, construing and applying the Constitution and statutes of Kentucky and here cited in the majority opinion. I cannot see that the true situation is changed by action of the city which differs no iota in kind or quality, but only in degree. Reasonable regulation is permissible. Norfolk Ry. v. Public Service Comm., 265 U. S. 70, 74, 44 S. Ct. 439, 68 L. Ed. 904. Arbitrary action and confiscation under the guise of regulation is prohibited. I believe this case falls within the latter category.