# MISSOURI, KANSAS & TEXAS RAILWAY COMPANY ET.AL. *v.* OKLAHOMA ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 205. Submitted March 5, 1926.—Decided May 24, 1926.

1. A contract between a city and a railroad company the enforcement of which would hamper the State's power reasonably to regulate the construction and use of a crossing of the railway by a city street, would be void. P. 307.
2. A contract between a city and a railroad company, whereby the company (owning the fee) granted the city the right of way for a street under its railroad, and the city agreed to pay the cost of construction, and which contained other stipulations made for the sake of doing away with unauthorized crossings and arranging for further street extensions, but none involving any surrender by the city of police power or eminent domain, *held* valid. P. 308. ·
3. An order of a state commission ignoring such a contract and requiring the company to construct the crossing and share the expense with the city, receiving from the city compensation for the right of way, impaired the obligation of the contract and deprived the company of property without due process of law. P. 306.

107 Okla. 23, reversed.

ERROR to a judgment of the Supreme Court of Oklahoma denying a petition by the Railway Company to set aside an order of the Oklahoma Corporation Commission, made on petition of the City of McAlester, and requiring the Company to provide a street crossing.

*Messrs. Joseph M. Bryson, Charles S. Burg, Maurice D. Green,* and *Howard L. Smith* for plaintiffs in error.

*Messrs. William J. Horton, E. S. Ratliff,* and *Jackman A. Gill* for defendants in error.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The railroad of plaintiff in error runs through the city of McAlester, Oklahoma. At Comanche Avenue the main

line is on a fill, and at least one industrial or sidetrack is
on a lower level. In September, 1921, the city applied
to the state Corporation Commission for an order re-
quiring the railway company to provide at that place a
pass under its tracks and a highway across its right of
way. The commission ordered that the company pre-
pare a plan and an estimate of quantities and cost for a
reinforced concrete subway, having two openings of speci-
fied dimensions; that the plan show the location of indus-
trial tracks, and that these tracks conform to the street
grade; that the plan and estimate be filed with the mayor
of the city and the Corporation Commission; and that if
the company and the city failed to agree on an appor-
tionment of cost of the underpass, the commission would
hear evidence on that subject. The company was or-
dered to have the underpass constructed and open for
traffic within 90 days after arrangement by the city to
pay its portion of the cost. The company filed its peti-
tion in the supreme court to have the order set aside on
the grounds, among others, that it is repugnant to the due
process clause of the Fourteenth Amendment, and im-
pairs the obligation of a contract in violation of § 10 of
Article I of the Constitution of the United States. The
court affirmed the order (107 Okla. 23), and the case is
here on writ of error. § 237, Judicial Code.

The line was built about 1873 on land granted by Con-
gress to the company—then known as the Union Pacific
Railroad Company, southern branch—for the construc-
tion of its railroad. Act of July 26, 1866, § 8, c. 270, 14
Stat. 289, 291. The city of South McAlester and the
townsite of McAlester were laid out subsequently, pur-
suant to the Act of Congress of June 28, 1898, § 14,
c. 517, 30 Stat. 495, 499. In platting these townsites,
streets were laid out to the boundary line on each side of
the land constituting the company's right of way. No-
vember 8, 1901, the city passed Ordinance No. 74. At

that time there were a number of unauthorized crossings in use by the public; but the city had not acquired by purchase or condemnation the right of way for the extension of any street across the railroad. The ordinance was accepted by the company and is in form a contract. It provided for the immediate extension of certain platted streets across the right of way, tracks and station grounds of the company in lieu of the unauthorized crossings then in use. Some of the new crossings were to be constructed by the company at its own expense, and the cost of others was to be borne equally by the parties. Terms and conditions for the construction of other crossings were set forth in the ordinance. It was declared that thereafter the city would open no other street across the right of way and tracks of the company except upon payment of amounts specified in the ordinance as stipulated damages for a right of way across the railroad, any determination in condemnation proceedings instituted by the city, whether more or less than the agreed sum, to the contrary notwithstanding. It was stated that nothing contained in the ordinance should constitute a waiver of the company's right to contest the opening of additional streets. But there is no provision purporting to limit power or authority of the city to establish or regulate street crossings over, under or upon the tracks and other property of the company. And it was specifically agreed that, if at any time the city should desire to extend and open Comanche Avenue across the company's right of way and station grounds, the crossing should be constructed under the tracks located upon the fill and at grade across tracks laid at the street level, according to plans and specifications approved by the company and at the sole cost and expense of the city. The company, for this and other considerations mentioned in the ordinance, agreed to waive all claims for damages caused by the opening and establishing of this crossing.

Pursuant to the Act of Congress of March 29, 1906, c. 1351, 34 Stat. 91, the city of McAlester was created by the consolidation of the city of South McAlester and the town of McAlester. In performance of the agreements contained in the ordinance, the city of McAlester in 1909, and again in 1912, assumed and paid portions of the cost of construction of some of the crossings covered by the ordinance. And ever since the consolidation it has been recognized and treated as the successor of the city of South McAlester and as a party to the contract. The present city is bound to the same extent as was its predecessor that passed the ordinance.

The court held that the state laws gave the commission full jurisdiction over all highways where they cross railways; that the commission had authority to order the crossing in question and to assess the cost of it against the city and the railway company, but not more than 50 per cent. against the city; that the company was the owner in fee of its right of way lands; that they could not be appropriated or damaged for public use without just compensation, and that the commission could not enforce obedience to its order to construct the grade crossing until the question of damage to the fee had been determined either by amicable settlement or by condemnation proceedings.

The order, as interpreted and affirmed, directly contravenes the provisions of the ordinance in respect of the Comanche Avenue crossing. It sets at naught the undertaking of the city to bear the cost of construction and the agreement of the company to give the city the right of way for the street crossing and to waive all claims for damages. The effect is to require the company forthwith to prepare the plan and estimate, and to direct the company—upon the determination of its just compensation and the consummation of arrangements by the city to pay the portion of the cost, if any, that may be imposed upon

it—to proceed to construct the underpass and to have it open for traffic within the time specified. If a contract exists between the parties in respect of this crossing, it is manifest that it would be impaired by the enforcement of the commission's order.

But defendants in error contend that the ordinance is void because it attempts to surrender police power; and therefore that there is no such contract.

It is elementary that for the safety and convenience of the public, the State, either directly or through its municipalities, may reasonably regulate the construction and use of highways where they cross railroads. The legitimate exertion of police power to that end does not violate the constitutional rights of railroad companies. They may be required at their own expense to construct bridges or viaducts whenever the elimination of grade crossings reasonably may be required, whether constructed before or after the building of the railroads. *Northern Pacific Railway* v. *Duluth,* 208 U. S. 583, 597; *Chi., Mil. & St. P. Ry.* v. *Minneapolis,* 232 U. S. 430, 438; *Mo. Pac. Ry.* v. *Omaha,* 235 U. S. 121, 127; *Erie R. R. Co.* v. *Public Utilities Comm'rs,* 254 U. S. 394, 409, 412. And such costs are not included in the just compensation which the railroad companies are entitled to receive. *Cincinnati, I. & W. Ry.* v. *Connersville,* 218 U. S. 336, 343; *Chi., Mil. & St. P. Ry.* v. *Minneapolis, supra,* 440. If the enforcement of its provisions operates to hamper the State's power reasonably to regulate the construction and use of the Comanche Avenue crossing, then undoubtedly the ordinance is void. *Chicago & Alton R. R.* v. *Tranbarger,* 238 U. S. 67, 76; *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548, 558; *Denver & R. G. R. R. Co.* v. *Denver,* 250 U. S. 241, 244.

The precise question is whether the agreement of the city to bear the cost of construction is inconsistent with the proper exertion of the police power.

When the ordinance was passed, it was the purpose of the parties to get rid of unauthorized crossings then in use and to arrange for the extension of platted streets across the tracks and station grounds. It was necessary for the city to obtain rights of way for that purpose; and it was empowered to acquire them by contract, purchase or condemnation. §§ 11, 14, c. 517, 30 Stat. 498, 499; Mansfield's Digest of the Statutes of Arkansas (1884), §§ 749, 760, 907–912. It could not take them without making just compensation to the owner. The company owned its right of way lands and station grounds in fee. *Missouri, Kansas & Texas Ry. Co.* v. *Roberts,* 152 U. S. 114. It was entitled to compensation for any of its property that might be taken or damaged by the construction and use of the crossings. *Chicago, Burlington, &c., R. R. Co.* v. *Chicago,* 166 U. S. 226, 251; *Cincinnati, I. & W. Ry.* v. *Connersville, supra.*

The ordinance did not purport to limit the number of crossings that might be opened. Retention by the company of the right to resort to litigation to determine whether the opening of additional streets across the railroad is reasonably necessary does not at all impinge upon police power. Quite independently of the ordinance, the opening and regulation of such crossings is subject to judicial scrutiny, and action that is arbitrary or capricious will be held invalid. *Denver & R. G. R. R. Co.* v. *Denver, supra,* 244. Indeed, the reservation contemplates the exertion of the police power and plainly implies that the parties did not intend to restrict the authority of the city to open crossings.

The agreement of the city to pay the amounts stipulated for the opening of certain crossings does not involve or contemplate any surrender of the power of eminent domain. It was authorized to contract, purchase or condemn as it saw fit. The opinion of the state court rightly approves amicable settlement of the compensa-

tion to be given the owner. The parties were not bound to resort to litigation. It was competent for them in advance to settle the form and amount of compensation. The company's agreement to grant a right of way for the crossing was a valid consideration for the city's undertaking to bear the cost of construction.

This case is not like *Northern Pacific Railroad* v. *Duluth, supra,* cited by defendants in error. There the city had the right of way for the street, and a grade crossing existed for many years. The elimination of that crossing became necessary. The company refused to comply with the city's demands in that respect. Then a contract was made. The city agreed to build a bridge to carry the street over the railroad tracks and the company agreed to contribute $50,000 to its cost. The city undertook to maintain the bridge over the tracks for 15 years and to maintain the approaches perpetually. The city built the bridge at a cost of $23,000 in addition to the amount paid by the company. Years later, when repairs were needed, the company refused to make them. This court following the decision of the Minnesota supreme court (98 Minn. 429) held that the contract was without consideration, against public policy and void. The Northern Pacific Company gave up nothing. The city already had the right of way. The company might have been required to build the bridge. The contract relieved it of a part of the cost, and attempted for all time to suspend the proper exertion of the police power in respect of maintenance. The ordinance now before us is very different from the situation and contract considered in that case.

There is nothing in the ordinance that involves any attempt to interfere with or hinder the proper exertion of police power. Evidently it was the intention of the parties to make a permanent settlement in respect of the crossings covered by the ordinance. The city was em-

powered to open the Comanche Avenue crossing at any time without condemnation or other proceedings. Neither party could terminate the contract without the consent of the other. *Western Union Telegraph Co.* v. *Pennsylvania Co.,* 129 Fed. 849, 862. The city's agreement to bear the cost of construction of the Comanche Avenue crossing does not infringe the police power. The enforcement of the commission's order would deprive plaintiff in error of its property without due process of law and would impair the obligation of the contract in violation of the Constitution of the United States.

*Judgment reversed.*