**AMERICAN TRUCKING ASSOCIATIONS, INC., and National Tank Truck Carriers, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

The Atchison, Topeka and Santa Fe Railway Company, representing 48 railroads, Southern Railway Company, representing 18 railroads, Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen, Order of Railway Conductors and Brakemen, Brotherhood of Railroad Trainmen and Switchmen's Union of North America, Commissioners of the Massachusetts Department of Public Utilities, State of Illinois, State of South Dakota, Public Utility Commission of the State of California, Intervening Defendants.

**Civ. A. No. 1905–64.**

United States District Court
District of Columbia.

June 10, 1965.

**598**

Peter T. Beardsley, William R. Rubbert, Richard R. Sigmon, and Harry C. Ames, Jr., of Washington, D. C., for plaintiffs.

William H. Orrick, Jr., Asst. Atty. Gen. of the United States, and John H. D. Wigger, Dept. of Justice, David C. Acheson, U. S. Atty., Robert W. Ginnane, Gen. Counsel, and Francis A. Silver, Associate Gen. Counsel, I. C. C., Washington, D. C., for defendants.

Paul F. McArdle and William M. Moloney, Washington, D. C., for intervenors, Atchison, Topeka & Santa Fe Railway Co., and others.

William P. Stallsmith, Jr., Washington, D. C., for intervenors, Southern Railway Co., and others.

George Stephen Leonard, Washington, D. C., for intervenors, Brotherhood of Locomotive Engineers, and others.

Edward G. Seferian, Counsel, Mass. Dept. of Public Utilities, Watertown, Mass., for intervenor, Commissioners of the Mass. Dept. of Public Utilities.

William G. Clark, Atty. Gen. of Illinois, and Edward G. Finnegan, Asst. Atty. Gen., Chicago, Ill., for intervenor, State of Illinois.

Frank L. Farrar, Atty. Gen., of South Dakota, Pierre, S. D., for intervenor, State of South Dakota.

Richard E. Tuttle, Chief Counsel, and William C. Bricca, Senior Counsel, Public Utilities Commission of State of California, San Francisco, Cal., and Austin L. Roberts, Jr., Washington, D. C., for intervenor, Public Utilities Commission of State of California.

The National Association of Railroad & Utilities Commissioners filed a brief amicus curiae.

Before TAMM, Circuit Judge, and KEECH and CURRAN, District Judges.

CURRAN, District Judge.

This is a civil action to suspend, enjoin, annul and set aside a report and order issued by the Interstate Commerce Commission, in its Docket No. 33440, Prevention of Rail-Highway Grade-Crossing Accidents Involving Railway Trains and Motor Vehicles, on January 22, 1964, discontinuing said proceeding.

The jurisdiction asserted by the plaintiffs is based upon the provisions of the Interstate Commerce Act, the Administrative Procedure Act, and Sections 1336, 1398, 2284, and 2321 to 2325 inclusive of Title 28, United States Code. The United

States of America was named a party defendant pursuant to the provisions of the United States Code, and the intervening defendants were allowed by order of this court to intervene in support of the defendants.

After a petition requesting the institution of an investigation to determine what action should be taken by the Commission to prevent collisions at railroad crossings between railway trains and motor vehicles engaged in the transportation of petroleum and dangerous inflammable liquids had been denied, the Commission, on February 6, 1961, instituted on its own motion an investigation into and concerning accidents at railroad-highway crossings involving railroad trains and highway motor vehicles transporting petroleum products and dangerous inflammable liquids. On September 13, 1961, the investigation was broadened to include all accidents at railroad-highway crossings involving trains and highway motor vehicles regardless of the nature of the commodities being transported. The main purpose of the investigation, as we view it, was to determine what safety requirements could be made within the authority of the Commission. The Commission concluded that the existing statutes did not vest it with any jurisdiction over railroads with respect to rail-highway grade-crossing matters, and the proceedings were formally discontinued effective January 22, 1964.

In our opinion, the basic question presented by the plaintiffs' complaint is whether Congress has invested the Interstate Commerce Commission with jurisdiction over railroads with respect to rail-highway grade-crossing matters.

■ Authority over public safety at rail-highway grade-crossings has been ruled by the Supreme Court of the United States as peculiarly within the police power of the states. Railroad Commission Cases (Stone v. Farmers' Loan & Trust Co.) 116 U.S. 307, 334, 6 S.Ct. 334, 388, 1191, 29 L.Ed. 636 (1886); Crutcher v. Commonwealth of Kentucky, 141 U.S. 47, 61, 11 S.Ct. 851, 35 L.Ed. 649 (1891); Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. People of State of Illinois, 177 U.S. 514, 516, 20 S.Ct. 722, 44 L.Ed. 868 (1900); Erb v. Morasch, 177 U.S. 584, 585, 20 S.Ct. 819, 44 L.Ed. 897 (1900); Southern Railway Co. v. King, 217 U.S. 524, 533, 30 S.Ct. 594, 54 L.Ed. 868 (1910); Atlantic Coast Line R. Co. v. State of Georgia, 234 U.S. 280, 292, 34 S.Ct. 829, 58 L.Ed. 1312 (1914); Denver & Rio Grande R. Co. v. City and County of Denver, 250 U.S. 241, 245, 39 S.Ct. 450, 63 L.Ed. 958 (1919); Erie Railroad Co. v. Board of Public Utility Commissioners, 254 U.S. 394, 410, 41 S.Ct. 169, 65 L.Ed. 322 (1921); Railroad Commission of State of California v. Southern Pacific Co., 264 U.S. 331, 341, 44 S.Ct. 376, 68 L.Ed. 713 (1924); Missouri, Kansas & Texas Ry. Co. v. State of Oklahoma, 271 U.S. 303, 307, 46 S.Ct. 517, 70 L.Ed. 957 (1926); Lehigh Valley R. Co. v. Board of Public Utility Commissioners, 278 U.S. 24, 35, 49 S.Ct. 69, 73 L.Ed. 161 (1928).

In the Railroad Commission Cases (Stone v. Farmers' Loan & Trust Co.), supra, after stating that the state may regulate freights and fares for business done within the state, the Court said,

"* * * So it may make all needful regulations of a police character for the government of the company while operating its road in that jurisdiction. In this way it may certainly require the company to fence so much of its road as lies within the state; to stop its trains at railroad crossings; to slacken speed while running in a crowded thoroughfare; * * * and other things of a kindred character affecting the comfort, the convenience, or the safety of those who are entitled to look to the state for protection against the wrongful or negligent conduct of others. * * *"

In Erie Railroad Co. v. Board of Public Utility Commissioners, supra, the Supreme Court stated,

"Grade crossings call for a necessary adjustment of two conflicting interests—that of the public using the streets and that of the railroads

and the public using them. Generically the streets represent the more important interest of the two. There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads, vital as they are, hardly can be called to the same extent. Being places to which the public is invited and that it necessarily frequents, the State, in the care of which this interest is and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made dangerous to the public, whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power, or to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires."

In Lehigh Valley R. Co. v. Board of Public Utility Commissioners, supra, the Supreme Court stated,

"This court has said that, where railroad companies occupy lands in the state for use in commerce, the state has a constitutional right to insist that a highway crossing shall not be dangerous to the public, and that, where reasonable safety of the public requires abolition of grade crossings, the railroad can not prevent the exercise of the police power to this end by the excuse that such change would interfere with interstate commerce or lead to the bankruptcy of the railroad."

■ The Interstate Commerce Commission is a creature of statute, and the Commission cannot exceed the specific authority delegated to it by the Congress.

The original Safety Appliance Act was adopted March 2, 1893 (27 Stat. 531). This Act was amended by the Act of March 2, 1903 (32 Stat. 943), and as so amended, it was supplemented by the Act of April 14, 1910 (36 Stat. 298). In both the amendatory and supplementary acts, Congress repeated its purpose "to promote the safety of *employees* and *travelers* upon railroads" (emphasis supplied). Section 25 of the Act was amended by the Act of August 26, 1937 (50 Stat. 835). The measure which was finally adopted by the Congress was S. 29, a Bill "to promote the safety of employees and travelers on railroads * * *". As originally introduced, one of the devices included was "highway grade-crossing protective devices". This bill was referred by the Chairman of the Committee on Interstate Commerce to the Commission for comments. On February 19, 1937, Mr. Joseph B. Eastman, Chairman, Legislative Committee, stated, inter alia, "There is no doubt that highway grade-crossing protective devices do in a measure increase safety of railroad operation; nevertheless, devices of this character are installed primarily to safeguard highway traffic. The inclusion of devices of this character in a Federal law would at once raise a question as to the authority of states, counties, cities and other political divisions, to continue to exercise their present powers in requiring the protection of dangerous highway crossings. * * * it is questionable whether it would be good public policy to include highway grade-crossing protective devices in an act of this character."

The bill was reported out on March 24, 1937, with amendments, which included striking out "highway grade-crossing protective devices" wherever it appeared in the measure. H.R. 185 was identical with S. 29. The language "highway grade-crossing protective device" was stricken from H.R. 185 on the recommendation of the Commission.

In view of the legislative history, it is clear to us that Congress, by the 1937

amendments to Section 25, did not intend to encroach upon the right of the states to exercise their police power with respect to rail-highway grade-crossing safety matters. In the absence of a clearly expressed purpose so to do, Congress will not be held to have intended to encroach upon the police power of the states.

■ We hold that neither Section 1 (21) of the Interstate Commerce Act, nor Section 25(b) of the Interstate Commerce Act, vests the Commission with any safety jurisdiction over railroads with respect to rail-highway grade-crossings.

We conclude, therefore, that jurisdiction to establish safety regulations with respect to rail-highway grade-crossing matters resides exclusively in the states.

Defendants and intervenors have challenged the status of the present plaintiffs to maintain this action because of the plaintiffs' inability to show any legal damage resulting from the action of the Interstate Commerce Commission. The Court believes that the plaintiffs lack status to maintain this action, and if the Court were required to pass upon this question, it would so hold. Since, however, the Court finds and holds that the Interstate Commerce Commission is without jurisdiction over railroads with respect to rail-highway grade-crossing matters, and since this finding is dispositive of the case in its entirety, the Court does not believe it is necessary to enlarge upon the question of the plaintiffs' status to sue.

■ The plaintiffs, at the hearing of this case, offered in evidence the entire record of the proceedings before the Interstate Commerce Commission. Defendants and intervenors objected to the admission of this record, basically upon the ground of its immateriality. The Court has decided that the record of the proceedings before the Interstate Commerce Commission should be received in evidence, and the Court has admitted it. In addition, the Court has considered the ruling of the Interstate Commerce Commission in its opinion MC–40.

The complaint shall be dismissed and judgment shall be rendered for the defendants, and the counsel for the United States will prepare the appropriate order.