**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 20 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
————————————————

UNION PACIFIC RAILROAD COMPANY, a
corporation,

    Plaintiff-Appellee,

v.

CITY OF ATOKA, STATE OF OKLAHOMA, a
municipal corporation,

    Defendant-Appellant,

and

JOHN J. CROWLEY and SUE A. CROWLEY,
husband and wife; JEFFREY W. GLASS and
WENDI C. GLASS, husband and wife; RANDY
M. COMBS and TERESA A. COMBS, husband
and wife; J.D. WILSON and SHANNON LEE
WILSON, husband and wife; DONNIE L.
ALLEN and MARY L. ALLEN, husband and
wife; CHARLES DALE, and DODD DUNCAN,
individually,

    Defendants-Appellees.

----------------

STATE OF OKLAHOMA, ex rel. Oklahoma
Department of Transportation,

    Amicus Curiae.

————————————————

No. 99-7115
(E.D. Okla.)
(D.Ct. No. 98-CV-606-S)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **McKAY**, and **KELLY**, Circuit Judges.

This suit was brought by Union Pacific Railroad Company ("Union Pacific") against the City of Atoka, Oklahoma ("Atoka"), to quiet title to land located within the corporate limits of Atoka. Atoka cross-claimed, asserting Union Pacific's interest in its right-of-way is conditioned on its continued use of the land for railroad purposes. The railroad used the land as a spur on its right-of-way for nearly seventy years, [1] but subsequently sold it to private individuals. The district court granted summary judgment in favor of Union Pacific, holding the railroad owned its right-of-way land in fee simple absolute not subject to reversion on abandonment, and Atoka appeals. On appeal, we must determine, as a matter of law, the nature of Union Pacific's right-of-way grant made pursuant to

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] "[T]he term 'right of way' has a two-fold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed." *Joy v. St. Louis*, 138 U.S. 1, 44 (1891).

the Act of July 25, 1866. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

In the Act of July 25, 1866, Congress made land and right-of-way grants primarily to the Kansas and Neosho Valley Railroad Company. *See* Act of July 25, 1866, ch. 241 §§ 1-8, 14 Stat. 236-38. However, Congress also created in the Act a railroad construction competition among three railroad companies, including Union Pacific, Southern Branch. [2] *See id.* § 11, 14 Stat. at 238-39. Each competitor sought to "construct and complete its road" and tie its railroad line to the point near the southern boundary of Kansas, where the Kansas and Neosho Valley Railroad was to cross the same point. *Id.*; *see also Missouri-Kansas-Texas R.R. Co. v. Early*, 641 F.2d 856, 857 (10th Cir. 1981). The competitor's incentive to win the construction race was the right to build a track, and acquire land grants, from southern Kansas, through Indian Territory, to a point near Preston, Texas. *Early,* 641 F.2d at 857-58. Union Pacific won the race. *Id*. at 858.

---

[2] The Union Pacific, Southern Branch, later became known as the Missouri, Kansas & Texas Railroad Company, which merged into the Missouri Pacific Railroad Company. In 1997, the Missouri Pacific Railroad Company merged into the Union Pacific Railroad Company, a party in this appeal. Because Union Pacific is a successor in interest, we will refer to Union Pacific as if it were the original grantee.

Union Pacific constructed its rail line, which passed through portions of Atoka, Oklahoma, pursuant to the July 25 Act.

The Act makes two grants: (1) alternating sections of land on each side of the road granted to the State of Kansas for the benefit of the railroad in financing the construction of its line, and (2) right-of-way land granted directly to the railroad company for construction of the rail line itself. *Compare* July 25 Act § 1, *with* July 25 Act §§ 6, 8. *See generally Railroad Co. v. Baldwin*, 103 U.S. 426, 428 (1880) (examining St. Joseph and Denver City Railroad Company's grants authorized by the Act of July 23, 1866, 14 Stat. 210). In this case, the subject land was granted pursuant to the right-of-way grant, not the alternating sections grant. Under the right-of-way grant, Congress authorized Union Pacific to construct its railroad through Indian Territory and public lands, granted one hundred feet in width on each side of the railroad, and provided "all necessary ground for station buildings ... switches, side-tracks, turn-tables, and water-stations." July 25 Act §§ 6, 8.

The subject property is located within the corporate limits of the City of Atoka. For years, Union Pacific used the land as a part of its railroad, but the company re-routed its mainline in 1906 and 1907. The company then used the

subject property as a spur. Union Pacific held ownership in the property until 1995, at which time the railroad sold the parcel to private individuals.

Union Pacific filed an amended complaint adding private individuals, who are the grantees and their successors claiming an interest in the abandoned spur parcel, as defendants to the suit. [3] Atoka filed a counter-claim against the Union Pacific and cross-claims against the individual defendants. The parties then filed cross-motions for summary and partial summary judgment. The district court granted Union Pacific's motion for summary judgment and denied Atoka's motion for partial summary judgment, holding as a matter of law that Congress, in the Act of July 25, 1866, granted the railroad a right-of-way in fee simple absolute with no right of reversion. [4] The district court entered judgment for Union Pacific,

---

[3] John and Sue Crowley, Jeffrey and Wendi Glass, Randy and Teresa Combs, J.D. and Shannon Lee Wilson, Donnie and Mary Allen, Charles Dale, and Dodd Duncan are the grantees and successors who claim an interest in the parcel. Union Pacific added them as individuals defendants, and they filed cross-claims against Atoka claiming the railroad owned the land in fee simple, and filed counter-claims against Union Pacific.

[4] The district court also held it was not bound to give an unpublished Oklahoma Court of Civil Appeals decision, involving private individuals who bought a small parcel of land adjacent to the railroad's right-of-way, collateral estoppel effect. On appeal, Atoka briefly explains the nature of the case before that court, but fails to further raise or even mention the issue of collateral estoppel. We deem the issue waived on appeal. *See Ambus v. Granite Bd. of Educ.,* 975 F.2d 1555, 1558 n.1 (10th Cir. 1992), *modified on other grounds on reh'g*, 995 F.2d 992 (10th Cir. 1993) (recognizing an issue mentioned in the brief on appeal, but not addressed, is considered waived).

and dismissed all cross claims and counterclaims as moot.

We review the district court's summary judgment ruling *de novo*. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979). The parties agree there are no genuine issues of material fact in dispute.

## DISCUSSION

We must determine as a matter of law whether Union Pacific acquired fee simple absolute title in its right-of-way land granted by the Act of July 25, 1866. Atoka argues we should construe the right-of-way land grant as a "limited fee" which reverts to Atoka when the railroad fails to use the land for railroad

purposes. [5] Atoka claims such a construction of the July 25 Act is appropriate for alternative reasons: first, the Supreme Court and Tenth Circuit interpret all railroad right-of-way land grants made in the 1860s as "limited fees," and second, Congress' right-of-way grant in the July 25 Act is more limited than that provided in the Act of July 26, 1866, ch. 270, 14 Stat. 289. [6]

Union Pacific's right-of-way title, granted by the July 25 Act, depends on the construction given to the Act in light of Congress' intent at the time the grant was made. *See Leo Sheep Co. v. United States,* 440 U.S. 668, 682 (1979) ("To ascertain [Congress'] intent we must look to the condition of the country when the [railroad land grant] acts were passed, as well as to the purpose declared on their face, and read all parts of them together." (quotation marks and citation omitted)). In 1850, "Congress embarked on a policy of subsidizing railroad construction by lavish grants from the public domain." *Great Northern Ry. Co. v.*

---

[5] Atoka contends the property reverts to Atoka pursuant to § 14 of the Act of April 26, 1906, 34 Stat. 137. However, because we hold there is no reversion to Atoka, we do not address the Act of April 26, 1906.

[6] The Act of July 26, 1866 authorized Union Pacific's railroad line from the southern boundary of Kansas, through Indian Territory, and branching east to Fort Smith, Arkansas. July 26 Act, § 8. The July 26 Act granted land to the state of Kansas in alternating sections for the benefit of the railroad company, and granted right-of-way land to Union Pacific directly. *Id.* at §§ 1, 8.

*United States*, 315 U.S. 262, 273 (1942). In this case, Congress' grant to Union Pacific occurred in 1866. However, by 1871, Congress discontinued "outright grants" of land to railroad companies because the public disfavored this practice. *Id*. at 274.

*Supreme Court and Tenth Circuit case law*

Atoka first claims all railroad right-of-way land grants in the 1860s have uniformly been interpreted as "limited fees," and, thus, Union Pacific received a limited fee grant in the July 25 Act. To support its contention, Atoka points to various Supreme Court and Tenth Circuit cases that discuss grants made pursuant to different acts and, in many instances, to different railroads. [7] We note the issue

---

[7] Atoka cites the following cases as support for its claim all 1860s grants are "limited fees": *United States v. Union Pac. R.R. Co.*, 353 U.S. 112, 113, 118-19 (1957) (discussing Union Pacific's right-of-way granted by the Act of July 1, 1862); *Great Northern,* 315 U.S. at 271, 273 n.6, 277-78 n.18 (discussing Great Northern's right-of-way granted by Act of March 3, 1875); *Union Pac. R.R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190 (1913) (discussing Union Pacific's right-of-way granted by the Act of July 1, 1862); *Northern Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 267-68, 271 (1903) (discussing Northern Pacific's right-of-way granted by the Act of July 2, 1864); *New Mexico v. United States Trust Co.*, 172 U.S. 171 (1898) (discussing Atlantic & Pacific's right-of-way granted by the Act of July 27, 1866); *Baldwin*, 103 U.S. at 429-30 (discussing St. Joseph & Denver's right-of-way granted by the Act of July 23, 1866); *Wyoming v. Andrus*, 602 F.2d 1379, 1380 n.2 (10th Cir. 1979) (discussing Union Pacific's right-of-way granted by Act of July 1, 1862, ch. 120, 12 Stat. 489, as amended by Act of July 2, 1864, ch. 216, 13 Stat. 356); and *Wyoming v. Udall*, 379 F.2d 635, 637 (10th Cir.) (same), *cert denied*, 389 U.S. 985 (1967).

-8-

before us is not other railroads' ownership interests granted pursuant to different congressional acts. *See Leo Sheep,* 440 U.S. at 681 (recognizing the "pertinent inquiry ... is the intent of Congress when it granted land to Union Pacific" at the time of the grant).

Furthermore, we cannot accept Atoka's sweeping characterization that all 1860s grants are limited fees. To the contrary, the Supreme Court and this court recognized Union Pacific's predecessor-in-interest received its right-of-way in fee, and not limited fee, in the Act of July 26, 1866. *See Missouri, K. & T. Ry. Co. v. Roberts*, 152 U.S. 114, 116-18 (1894); *Missouri, K. & T. Ry. Co. v. Oklahoma*, 271 U.S. 303, 304, 308 (1926); *Early*, 641 F.2d at 860. We examine the cases discussing Union Pacific's right-of-way interest granted by the July 26 Act because they clearly refute Atoka's blanket assertion all 1860s fees are "limited" fees, and are instructive in our consideration of the railroad's right-of-way interest granted by the July 25 Act.

In *Roberts*, Mr. Roberts sought to recover possession of lands occupied by the railroad as a right-of-way. 152 U.S. at 114. The Court examined Congress' grant of right-of-way land to the railroad in the Act of July 26, 1866. *Id.* at 115-16. The court concluded "[t]he United States had the right to authorize the

construction of the road of the Missouri, Kansas & Texas Railway Company through the reservation of the Osage Indians, and to *grant absolutely the fee* of the 200 feet as a right of way to the company." *Id.* at 116 (emphasis added). The Supreme Court attached no conditions to the July 26 right-of-way, and explicitly made a "grant of both fee and possession" to the railroad. *Id*. at 118.

Over thirty years later, the Supreme Court again considered the same railroad's right-of-way interest granted by the same July 26 Act. [8] *Oklahoma*, 271 U.S. at 304. In *Oklahoma*, the Court held the Oklahoma Corporation Commission could not lawfully order the railroad to construct and pay for an underpass beneath the railroad's right-of-way without paying the railroad just compensation. *Id*. at 303-304, 308. The Court cited *Roberts* exclusively, and held "[t]he company owned its right of way lands and station grounds in fee." *Id.* at 308.

In *Early*, Union Pacific's predecessor in interest brought action to quiet title in lands along its right-of-way that were encroached by abutting landowners. 641 F.2d at 856. The landowners cross-claimed and alleged that the railroad had

---

[8] The right-of-way land at issue was located in McAlester, Oklahoma, which appears to be located further south than the southernmost reach of the July 26 Act, and is more accurately within the geographic scope of the July 25 Act.

"acquired, at best, an interest in the nature of an easement, subsequently abandoned, thereby causing ownership to vest in the owners of the abutting property." *Id*. The right-of-way land was governed by both the July 25 and July 26 Acts. *Id.* at 857-58. This court held, " *Roberts...,* [and] *Oklahoma, ...* control our determination .... The Act of July 26, 1866, when viewed in the light of the times, clearly expresses the intent of Congress to grant to the railway a fee interest in the Indian lands." *Id.* at 860. Although we acknowledged some difficulty with the July 25 Act's "cicuitous" language in §§ 6 and 8, we recognized the July 26 Act cures any controversy surrounding the nature of Union Pacific's land grant. We unequivocally held the Acts provide the railroad with fee title in its right-of-way lands. *Id*.

In this case, Atoka is essentially requesting this court to reconsider our *Early* opinion, and re-characterize Union Pacific's right-of-way interest granted by the 1866 Acts as "a [limited] fee interest." It suggests the *Early* case granted only "a fee interest," not a grant in fee absolute. However, Atoka's emphasis on this phrase from *Early* is factually disingenuous and legally insufficient. The *Early* panel affirmed the trial court's explicit holding the July Acts vested "fee simple absolute title in the railroad." *Id.* at 857, 860.

-11-

"Under the doctrine of *stare decisis*, this panel cannot overturn the decision of another panel of this court ... absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." *United States v. Meyers*, 200 F.3d 715, 719-20 (10th Cir. 2000) (recognizing *stare decisis* is a "decision on a legal point" or "precedent in which a court has decided identical factual issues" (quotation marks and citation omitted)). Prior precedent "includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law." *Id*. There has been no *en banc* reconsideration of this issue and Atoka cites no superseding Supreme Court ruling, instead relying on cases dating from 1881 to 1957. *See, supra* n.7.

Atoka next suggests this court, in *United States v. Drumb*, resolved that Union Pacific acquired a right-of-way in limited fee pursuant to the July 25 Act. 152 F.2d 821 (10th Cir. 1946). Atoka claims this court's disagreement with the trial court's conclusion in *Drumb* that the railroad received full fee title to the right-of-way controls our decision in this case, even though we did not analyze or decide *Drumb* based on that point. *Id*.

In *Drumb*, the United States brought suit, on its own behalf and for the benefit of certain Indian tribes, to quiet title to lands that were set aside for

-12-

railroad purposes but were later abandoned by the railroad having never been used for railroad purposes. *Id.* at 822. We listed the trial court's holdings as follows:

> (1) That the grant vested the full fee title to the tract in the railroad company, and that the abandonment did not effect a reverter; (2) that the statute of limitations had run; (3) that the Act of April 26, 1906, 34 Stat. 137, Section 14, vested the title in the City of McAlester; (4) that the railroad company did not abandon the tract because it acquired land on the other side of the tracks for railroad purposes.

*Id*. This court then stated, "We cannot agree with the trial court's conclusions Numbers 1, 2, and 4, but since we agree with the trial Court's conclusion Number 3, it would serve no useful purpose to recite in detail the reasons why we do not agree with the other conclusions of the court." *Id*. Thus, we did not discuss, analyze or issue a holding on whether the railroad acquired a limited fee in the Act of July 25, 1866. *Id.* at 821-24.

We are not bound by the *Drumb* comment because the statement is dicta. "Dicta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.'" *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting Black's Law Dictionary 454 (6th ed. 1990)); *cf. Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("[W]hat the [agency] describes as 'dicta' are the essentials of our first decision, the grounds on which we reversed .... Take [the essentials] away and there wouldn't be an opinion, just a conclusion."). In

*Drumb*, we limited our examination and resolution to the "trial court's conclusion Number 3 [that the Act of April 26, 1906, 34 Stat. 137, Section 14, vested the title in the City of McAlester]." 152 F.2d at 822. In fact, we explicitly stated any further discussion of the trial court's alternative conclusions "would serve no useful purpose." *Id.* The statement at issue is unessential to the determination of the opinion, lacks analysis, and is "unsupported by citation to relevant authority"; we are not bound by a prior panel's dicta. *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir.), *cert. denied*, 528 U.S. 1005 (1999); *see also Bates v. Department of Corrections*, 81 F.3d 1008, 1011 (10th Cir. 1996).

In summary, we reject Atoka's argument that all 1860s right-of-way grants are limited fees because, absent a supervening Supreme Court case or en banc reconsideration, we are bound by a prior panel's holding, but not its dicta.

*Union Pacific's right-of-way granted by the Act of July 25, 1866 compared with that granted by the Act of July 26, 1866*

As we do not accept Atoka's first argument, we turn our attention to its alternative contention that the July 25 Act authorizes a more limited right-of-way grant than the July 26 Act. This argument followed to its logical conclusion suggests the July 26 Act contemplates a fee absolute grant, while the July 25 Act merely provides a limited grant conditioned on the railroad's continued use of its

-14-

right-of-way for railroad purposes. According to Atoka, the fact that the two acts have "technical differences in the granting language" intimates the acts convey different ownership interests to the railroad. Specifically, Atoka suggests: (1) Section 6 of the July 25 Act contains limitations, unlike Section 8 of the July 26 Act, that the right-of-way is granted "for the construction of the railroad as proposed," and (2) Section 6 of the July 25 Act implicitly incorporates limiting language from Sections 1 and 3 of the same Act, which states the purpose of the grant is to construct and operate a railroad. We disagree with Atoka's reading of the acts, and ultimately its contention the July 25 Act provides a more limited right-of-way grant.

While mindful of the historical conditions existing at the time of the grant, "[w]e begin with the plain language of the law." *St. Charles Inv. Co. v. Commissioner of Internal Revenue*, 232 F.3d 773, 776 (10th Cir. 2000); *see also Leo Sheep*, 440 U.S. at 682. Section 11 of the July 25 Act provided the winner of the railroad construction race, in this case Union Pacific, with grants "according to the provisions of this act." The right-of-way grants inuring to Union Pacific were governed by § 8 of the Act:

> That said [Union Pacific] . . . is hereby authorized and empowered to *extend and construct* its railroad . . . and the right of way through the Indian Territory, wherever such right is now reserved or may hereafter be reserved to the United States by treaty with the Indian

-15-

tribes, is hereby granted to said company, to the same extent as granted by the *sixth section* of this act through the public lands[.]

July 25 Act § 8 (emphasis added). Section 6 of the July 25 Act, in relevant part, provides:

[T]he right of way through the public lands be, and the same is hereby, granted to said [Union Pacific], its successors and assigns, for the *construction of a railroad as proposed* .... Said way is granted to said railway to the extent of one hundred feet in width on each side of said road where it may pass through the public domain; also all necessary ground for station buildings, workshops, depots, machine-shops, switches, side-tracks, turn-tables, and water-stations.

(Emphasis added.)

On the following day, Congress enacted legislation that pertained exclusively to Union Pacific, but contained "[a] similar land grant procedure." *Early*, 641 F.2d at 858. Congress granted Union Pacific right-of-way land through Indian Territory in Section 8 of the July 26 Act as follows:

That said Pacific Railroad Company, southern branch [Union Pacific], its successors and assigns, is hereby *authorized and empowered to extend and construct* its railroad .... [T]he right of way through said Indian Territory is hereby granted to said company [Union Pacific], its successors and assigns, to the extent of one hundred feet on each side of said road or roads, and all necessary grounds for stations, buildings, work-shops, machine-shops, switches, side-tracks, turn-tables, and water-stations.

(Emphasis added.)

-16-

We disagree with Atoka's argument that Section 6 of the July 25 Act provides a more limited right-of-way grant than Section 8 of the July 26 Act. Both acts contain identical language stating the railroad "is authorized and empowered to extend and construct its railroad." *See* Act of July 25 § 8; Act of July 26 § 8. Section 6 of the July 25 Act, which is incorporated into Section 8 of the same Act, establishes the right-of-way through public lands "for the construction of a railroad as proposed." July 25 Act at §§ 6, 8. When we construe these substantially similar phrases similarly, it is evident Congress granted right-of-way lands in both acts in order for Union Pacific to "construct" its railroad. *See Kansas v. United States*, 204 U.S. 331, 338 (1907) (recognizing the similarity between the July 25 and July 26 Acts, and stating the acts "us[e] the same language, except as to the routes"); *see also White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1434 (11th Cir. 1997) ("It is a familiar canon of statutory construction that courts should generally construe similar statutory language similarly."). Congress made no mention that the railroad was obligated to "operate" a railroad *ad infinitum* on that land. Because it is "our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written," we cannot accept Atoka's argument that Sections 6 and 8 of the July 25 Act provide a more limited right-of-way grant than that offered in Section 8 of the July 26 Act. *United States v. Great Northern Ry. Co.*,

-17-

343 U.S. 562, 575 (1952).

We also reject Atoka's artful, albeit flawed, reading of the July 25 Act which lassos language from Sections 1 and 3 and incorporates it into the right-of-way sections. Atoka suggests the Section 6 language "[t]hat the right of way through the public lands be ... granted ... for the construction of a railroad *as proposed* " opens the door for sections 1 and 3 to be read into the right-of-way provisions. July 25 Act, § 6 (emphasis added). Section 1 states, among other things, that land is granted to the State for the purpose of aiding the railroad "to construct and operate a railroad"; and Section 3 states "[t]hat the grant of lands hereby made [to the State] is upon condition that said company, after the construction of its road, shall keep it in repair and use." July 25 Act §§ 1, 3. Atoka cites no case or authoritative rationale to support its reading of this Act.

We can think of no reason why we should import the language from Sections 1 and 3 into Sections 6 and 8, and one critical reason why we should not. If we accepted such a reading we would obviate the structure and purpose of the July 25 Act. *See United States v. Lewis* , 67 F.3d 225, 228-29 (9th Cir. 1995) (requiring particular phrases be construed in light of the overall purpose and structure of the act). As we previously mentioned, the Act is structured to make

-18-

two grants: one, alternate sections of lands on each side of the proposed railroad granted to the state to benefit the railroad in constructing its line; and two, the right-of-way granted directly to the railroad company. *Compare* July 25 Act § 1, 3 *with* July 25 Act §§ 6, 8. Sections 1 and 3 [9] refer to the alternate sections of land granted to the State for the benefit of the railroad; Sections 6 and 8 address the right-of-way grant made directly to the railroad. *Id.* Section 6 provides no directive to refer to, much less import language from Sections 1 and 3 when determining the extent of the railroad's right-of-way grant. *See* July 25 Act, § 6.

Additionally, if we were to accept Atoka's reading of the July 25 Act, we would be thwarting, if not nullifying Congress' intent; we must presume Congress acted intentionally when it included language in Sections 1 and 3, conditioning the State's grant of alternating lands on the "construct[ion] and operat[ion of] a railroad," or the railroad's "repair and use" of its road, but did not include the same language in the same Act's right-of-way sections. *Compare* July 25 Act § 1, 3 *with* July 25 Act §§ 6, 8. "Where language appears in one section of a statute but not in another section, we assume the omission was intentional." *Universal*

_____

[9] Read in its entirety, Section 3 refers to the alternating land grants made to the state in Section 1. *See* July 25 Act § 3. Section 3 refers to Section 1 as those grants "hereby made" and the land that is "reserved as aforesaid shall inure to the benefit of said company." *Id.* The section does not address the right-of-way grants made in Sections 6 and 8. *Id.*

*Constr. Co. v. Occupational Safety & Health Review Comm'n*, 182 F.3d 726, 729 (10th Cir. 1999). This court's obligation is to "give effect to the intent of the legislature as expressed rather than determine what the law should or should not be." *Beck v. Northern Natural Gas Co.*, 170 F.3d 1018, 1024 (10th Cir. 1999) (quotation marks and citation omitted). Because the July 25 Act establishes two land grants and the land at issue is governed exclusively by the right-of-way grants in Sections 6 and 8, the conditional language of Sections 1 and 3 setting forth the alternating section grants lies outside our inquiry.[10] In other words, we will not inject language from the alternating land grants sections into the right-of-way provisions.

For all of the following reasons, we hold the July 25 Act conveyed to Union Pacific a fee absolute title in its right-of-way with no right of reversion: (1) not all 1860s right-of-way land grants are automatically construed as limited fees; (2) our comment in *Drumb* is dicta; and (3) Union Pacific's right-of-way granted by the July 25 Act is not more limited than that authorized in the July 26 Act.

---

[10] Atoka candidly concedes the only issue in this case is the right-of-way grant.

**AFFIRMED** .

Entered by the Court:

**WADE BRORBY**
United States Circuit Judge